IN RE INTEREST OF CLIFFORD M. ET AL., CHILDREN UNDER 18
YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. SUZETTE M., APPELLANT.
606 N.W.2d 743

Filed February 11, 2000.   No. S-98-1339.

Stephanie Weber Milone for appellant.

James S. Jansen, Douglas County Attorney, and Karen S.
Kassebaum for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN,
MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
NATURE OF CASE
Suzette M., the mother of Clifford M., Colette M., and
Chelsea M., appeals from two orders of the separate juvenile
court of Douglas County. The first order, entered November 20,
1998, overruled Suzette's motion, which was styled in the alter-
native as a motion to dismiss, motion for partial summary judg-
ment, or demurrer ore tenus (hereinafter referred to as "motion

to dismiss"). By her motion to dismiss, Suzette sought to have the State's motion to terminate her parental rights dismissed. The second order, entered December 10, denied Suzette's motion for visitation with her children. For the reasons stated below, we conclude that the two orders Suzette challenges are not appealable orders, and accordingly, we dismiss this appeal for lack of appellate jurisdiction.

## STATEMENT OF FACTS

This is the second appearance of this juvenile proceeding before the Nebraska appellate courts. In the first appeal, the Nebraska Court of Appeals reversed the juvenile court's order of March 27, 1997, which had terminated Suzette's parental rights to all three children. *In re Interest of Clifford M. et al.*, 6 Neb. App. 754, 577 N.W.2d 547 (1998). The Court of Appeals concluded that termination of Suzette's parental rights based on her refusal to comply with a court-ordered plan which required her to admit to her sexual abuse of her children violated Suzette's constitutional right to be free from self-incrimination. *Id.* A petition for further review was denied on May 14, 1998.

The facts regarding the early procedural history of this case can be found in the opinion of the Court of Appeals. *Id.* In the first appeal, the Court of Appeals noted that Clifford, born on February 17, 1990; Colette, born on February 1, 1992; and Chelsea, born on December 28, 1992, had been adjudicated children as described in Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993) on the basis of a second amended petition dated November 10, 1994. The adjudication was based upon the faults and habits of Suzette, with the juvenile court finding that Clifford had been thrown into a wall by Suzette's live-in boyfriend on or about February 22, 1994, and that all three children had been subjected to sexual contact by both the boyfriend and Suzette. Custody of the children was placed with the then Department of Social Services.

Following the adjudication, Suzette was subject to a series of rehabilitation plans approved by the juvenile court. On March 3, 1995, the juvenile court entered a rehabilitation plan designed to continue efforts toward the eventual reunification of the family. The Court of Appeals summarized the plan as follows:

> Among other requirements, the court ordered Suzette to submit to psychiatric examinations, participate in a YWCA domestic violence program, find appropriate housing, find a legal source of income, and participate in the children's therapy as requested by their therapist. Suzette was granted reasonable rights of visitation, at a minimum of once per week and twice per week if possible. The rehabilitation order was thereafter periodically reviewed and reaffirmed.

*In re Interest of Clifford M. et al.*, 6 Neb. App. at 756, 577 N.W.2d at 550.

The Court of Appeals noted that subsequent to the March 1995 plan, the juvenile court entered an order continuing the prior rehabilitation plan, and further ordered Suzette to participate in a program entitled "Parents United," a program designed specifically for families affected by sexual abuse. Suzette refused to comply with the Parents United program requirement that she admit to sexually abusing her children. Because of this refusal, Suzette was denied admission into the program. Because she did not participate in the Parents United program, the juvenile court concluded that Suzette had " 'not addressed the issue of sexual abuse which placed her children into protective custody . . . .' " *Id.* at 757, 577 N.W.2d at 550. This conclusion led the juvenile court to terminate Suzette's parental rights, which termination was subsequently reversed by the Court of Appeals.

In reversing the order terminating Suzette's parental rights, the Court of Appeals stated as follows:

> As a result of our decision, the termination order is reversed, and the matter is remanded with directions. The children will remain in the custody of the State until further order of the juvenile court, a rehabilitation plan will remain in effect, and the juvenile court judge will continue to enter appropriate orders guaranteeing the safety, health, and welfare of these children. The State is not prejudiced from filing another motion to terminate Suzette's parental rights on lawful grounds and presenting evidence to support such motion . . . .

*In re Interest of Clifford M. et al.*, 6 Neb. App. 754, 774, 577 N.W.2d 547, 559 (1998). The cause was remanded to the juvenile court.

Upon remand, the juvenile court, in accordance with the mandate of the Court of Appeals, dismissed the first motion to terminate Suzette's parental rights on June 26, 1998. On July 1, the State and the guardian ad litem appointed to represent the children filed a second motion to terminate Suzette's parental rights. The second motion to terminate was based on Neb. Rev. Stat. § 43-292(7) (Reissue 1998), operative July 1, 1998, which provides:

> The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:
>
> . . . .
> (7) The juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months.

Suzette responded by filing her motion to dismiss the second motion to terminate her parental rights on the ground that the motion to terminate was based upon the improper retroactive application of the statutory amendment to § 43-292(7). Prior to July 1, 1998, § 43-292(7) had provided for termination based on out-of-home placement for 18 months or more and failure to correct conditions leading to the out-of-home placement. See § 43-292(7) (Cum. Supp. 1996). In her motion to dismiss, Suzette claimed that she had been denied her statutory and due process rights to be informed of the basis of the second termination proceedings brought against her. For the sake of completeness, we note that the original motion to terminate filed on December 5, 1996, had also alleged out-of-home placement under § 43-292(7), as it then existed, as one of the bases of termination. In December 1996, § 43-292(7) required a period of 18 months of out-of-home placement compared to 15 months under § 43-292(7), operative July 1, 1998. Following the remand from the Court of Appeals, Suzette also moved for visi-

tation with her children, which visitation had been suspended due to the original termination.

The record in the instant appeal discloses a series of review hearings following remand, but no new rehabilitation plans were approved by the juvenile court. Accordingly, pursuant to the direction of the Court of Appeals on remand, the previous rehabilitation plan remained in effect, except that Suzette could not be compelled to waive her right against self-incrimination. At the September 2, 1998, combined review and permanency hearing, a case plan and progress report were submitted into evidence without objection. See Neb. Rev. Stat. § 43-1312 (Reissue 1998). As recognized by the juvenile court at the September 2 hearing, reunification of the children with Suzette remained the permanency objective of the juvenile proceedings.

On November 19, 1998, the juvenile court heard Suzette's motion to dismiss. The motion to dismiss was denied on November 20.

On December 9, 1998, the juvenile court heard Suzette's motion for visitation. The evidence showed, inter alia, as follows: Dr. Cynthia Topf, a clinical psychologist specializing in sexual abuse cases, and Deniz Leuenberger, the Nebraska Department of Health and Human Services caseworker assigned to these juvenile proceedings, both testified against permitting Suzette visitation with the children. According to their testimony, each of the children was severely traumatized by the mere discussion of visitation with Suzette. The foster mother, with whom all three of the children were placed, reported to Dr. Topf that after the children had met with Dr. Topf and Leuenberger to discuss visitation with Suzette, Chelsea had wet her pants and had a nightmare in which a man had told her to remove her clothing and from which she awoke naked; Colette became extremely dependent and would cry; and Clifford began to act out at day care and destroyed a tape recorder which Suzette had given him. Dr. Topf identified the children's behaviors as resulting from their having been sexually abused and stated that as a result of the children's responses to the possibility of visitation with Suzette and Suzette's failure to admit the sexual abuse and receive treatment therefor, it would not be in the best interests of the children to have visitation with their mother. The children's

caseworker, Leuenberger, also testified that in her opinion, it would not be in the best interests of the children for Suzette to have visitation with them at that time. Suzette's motion for visitation with her children was denied on December 10, 1998.

Suzette appeals from the orders denying her motion to dismiss and her motion for visitation.

## ASSIGNMENTS OF ERROR

On appeal, Suzette assigns, restated, two errors: (1) The juvenile court erred in denying her motion to dismiss the second motion to terminate her parental rights because such motion to terminate is based upon the improper retroactive application of amended provisions in the juvenile code, thus violating her due process and statutory rights, and (2) the juvenile court erred in denying her motion for visitation with her children.

## STANDARDS OF REVIEW

■ Juvenile cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the juvenile court's findings; however, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Sarah K.,* ante p. 52, 601 N.W.2d 780 (1999); *In re Interest of Tabatha R.,* 255 Neb. 818, 587 N.W.2d 109 (1998).

■ When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent from the decisions made by the lower courts. *In re Interest of Sarah K., supra; In re Interest of Joshua M. et al.,* 251 Neb. 614, 558 N.W.2d 548 (1997).

## ANALYSIS

Before we address Suzette's assigned errors, we must first consider the issue of whether this court possesses jurisdiction to hear the instant appeal. *Breeden v. Nebraska Methodist Hosp.,* 257 Neb. 371, 374, 598 N.W.2d 441, 443 (1999) (stating "[i]t is not only within the power, but it is the duty, of an appellate court to determine whether it has jurisdiction over the matter before it"). Neb. Rev. Stat. § 25-1911 (Reissue 1995) provides for

appellate review of final orders. A final order is defined as "[a]n order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment . . . ." Neb. Rev. Stat. § 25-1902 (Reissue 1995). Since each of the challenged orders neither determines the action and prevents a judgment nor was made upon a summary application in an action after judgment, we must determine whether the challenged orders affect a substantial right and are made in a special proceeding.

A proceeding before a juvenile court is a "special proceeding" for appellate purposes. *In re Interest of Sarah K., supra; In re Interest of Tabatha R., supra.* To be appealable, an order in a special proceeding must affect a substantial right. *Id.* A substantial right is an essential legal right, not a mere technical right. *In re Interest of Anthony G.,* 255 Neb. 442, 586 N.W.2d 427 (1998).

This court has previously noted that "a judicial determination made following an adjudication in a special proceeding which affects the substantial rights of parents to raise their children is a final, appealable order." *In re Interest of Tabatha R.,* 255 Neb. at 827, 587 N.W.2d at 116. Accordingly, to determine the appealability of the orders in this case, it is necessary for us to consider the nature of the court's orders denying Suzette's motion to dismiss and denying Suzette's motion for visitation, and what parental rights, if any, were affected by these orders.

*Motion to Dismiss.*

We first analyze the appealability of the denial of Suzette's motion to dismiss. We have previously considered the appealability of a denial of a motion to dismiss in a juvenile proceeding. See *In re Interest of L.W.,* 241 Neb. 84, 486 N.W.2d 486 (1992). In *In re Interest of L.W.,* we stated:

"To be final, an order [regarding a motion to dismiss] must dispose of the whole merits of the case and must leave nothing for the further consideration of the court. Thus, when no further action of the court is required to dispose of a pending cause, the order is final. However, if the cause is retained for further action, the order is

interlocutory. [Citation omitted.] Furthermore, if a party's substantial rights are not determined by the court's order and the cause is retained for further action, the order is not final. [Citations omitted.]"
241 Neb. at 95-96, 486 N.W.2d at 495 (quoting *Larsen v. Ralston Bank*, 236 Neb. 880, 464 N.W.2d 329 (1991)).

It is apparent in the instant case that following the dismissal of Suzette's motion to dismiss, further action will be required in the juvenile court. Upon remand from the Court of Appeals, Suzette continues to be subject to a rehabilitation plan and the juvenile court continues to administer the plan, with the exception that Suzette cannot be compelled to waive her right against self-incrimination in connection with her counseling. Further, following remand by the Court of Appeals, the juvenile court made a specific finding that reunification remains the stated permanency objective in the case. Thus, although a second motion to terminate parental rights has been filed, Suzette may still contest that motion by a showing that she has rehabilitated herself through compliance with the rehabilitation plan, thereby achieving permanency and regaining custody of her children, who have been in out-of-home placement. See *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998). Suzette's parental rights were not substantially affected by the denial of her motion to dismiss.

The denial of Suzette's motion to dismiss did not dispose of the whole merits of the case, and the case remains pending in the juvenile court for further action. To the extent there could be merit to Suzette's motion to dismiss, about which we make no comment, the substance of her challenge to the application of § 43-292(7) as amended can be preserved at the termination hearing, if any, and considered on appeal therefrom. Accordingly, we conclude that the juvenile court's denial of Suzette's motion to dismiss did not affect a substantial right and was not a final order for purposes of appeal.

*Motion for Visitation.*

We next analyze the appealability of the denial of Suzette's motion for visitation. Suzette argues in effect that denial of visitation with her children is tantamount to the termination of her parental rights. Given the facts of the case, we conclude that the

denial of Suzette's motion for visitation did not affect a substantial right, and therefore, the order is not appealable.

As noted above, the terms of Suzette's rehabilitation and potential reunification with her children have been outlined in the rehabilitation plans adopted by the juvenile court in this case over several years and remain in effect. Those terms include Suzette's finding suitable housing for the children, finding a legal source of income, and profitably participating in therapy. Furthermore, after remand and notwithstanding the filing of the second motion to terminate, the stated permanency goal in this case remains reunification. The success of Suzette's being reunified with her children does not hinge solely on whether or not she engages in visitation with her children at this time, but, rather, on her overall progress in meeting the reasonable goals of the reunification plan, see, e.g., *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987), so that the children can be returned to her custody and cease their out-of-home placement status. The juvenile court's order denying visitation does not purport to terminate visitation. See *In re Interest of Zachary L.*, 4 Neb. App. 324, 543 N.W.2d 211 (1996). Rather, Suzette remains free to regain visitation upon a showing that such visitation is in the best interests of the children.

The court is aware of the case of *In re Interest of B.J.M. et al.*, 1 Neb. App. 851, 510 N.W.2d 418 (1993), in which the Court of Appeals reversed an order terminating a father's parental rights to his four children based upon "abandonment," following a no contact order imposed by the juvenile court. The Court of Appeals found the State had "systematically created [a] series of impediments" to the father's efforts to see his children, first by the action of the Department of Social Services and later by the juvenile court. *Id.* at 864, 510 N.W.2d at 426. The Court of Appeals determined that based upon the evidence in that case, the actions by the State and the juvenile court had effectively blocked repeated efforts by the father to see his children, and thus the State had failed to prove by clear and convincing evidence that the father had abandoned his children for a period of 6 months immediately prior to the filing of the petition. Thus, our jurisprudence allows for recognition that a no contact or a no visitation order can significantly impact parental rights and that

a no visitation order can affect substantial rights. Indeed, it has been held that an order terminating visitation can be a final order. *In re Interest of Zachary L., supra.*

In contrast to the proceedings in *In re Interest of B.J.M. et al.*, the termination proceedings pending against Suzette are not based upon her lack of visitation with or abandonment of the children. In the instant case, the State and the guardian ad litem seek to terminate Suzette's parental rights based upon the out-of-home placement of the children for 15 of the most recent 22 months. See § 43-292(7). The out-of-home placement of the children, in turn, is due to Suzette's own sexual abuse of the children and her failure to protect the children from sexual abuse and other abuses by her boyfriend. Indeed, it is undisputed that the children were initially removed from the home and adjudicated due to the faults and habits of Suzette. In sum, it is the habits of Suzette and her failure to rehabilitate herself rather than the suspension of visitation which perpetuate the out-of-home placement of her children. The denial of visitation in the context of the instant case did not affect a substantial parental right of Suzette to raise her children. See *In re Interest of Anthony G.*, 255 Neb. 442, 586 N.W.2d 427 (1998).

We conclude, therefore, that the court's order denying Suzette's motion for visitation does not affect a substantial right and, accordingly, is not a final order for purposes of an appeal. In the absence of a judgment or appealable order, this court has no authority or jurisdiction to act, and in the absence of such judgment or order, the appeal will be dismissed.

## CONCLUSION

Neither of the juvenile court's orders denying Suzette's motion to dismiss and denying Suzette's motion for visitation affected a substantial right. Therefore, the orders are not appealable orders. The appeal must be dismissed for lack of jurisdiction for the reasons stated above.

APPEAL DISMISSED.