(Reissue 2008); *In re Interest of N.M. and J.M.*, 240 Neb. 690, 484 N.W.2d 77 (1992). And, in fact, the juvenile court appointed backup counsel for Carlos at the initial hearing because he had not yet formally retained an attorney for representation at that point. However, Carlos thereafter hired counsel at his own expense, which he maintained throughout the juvenile court proceedings. As a result, we cannot find that the juvenile court erred in refusing to require the State to pay for an expert witness on Carlos' behalf.

### 9. Plain Error

[22] Carlos requests that we review the record for plain error. It is not the duty of a reviewing court to search the record for the purpose of ascertaining whether there is error, and any error must be specifically pointed out. *In re Interest of N.L.B.*, 234 Neb. 280, 450 N.W.2d 676 (1990). However, we have conducted a de novo review of the record as required by our standard of review in juvenile cases and found no plain error.

### VI. CONCLUSION

We conclude that the juvenile court did not err in terminating Carlos' parental rights to Skylar, Ashton, Taylor, and Jordana. Therefore, the decision of the juvenile court is affirmed.

Affirmed.

———————————

In re Interest of Nathaniel P., a child
under 18 years of age.
State of Nebraska, appellee, v.
Ashley P., appellant.
___ N.W.2d ___

Filed May 27, 2014.    No. A-13-620.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.

3. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

4. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by a tribunal from which the appeal is taken.

5. **Final Orders: Appeal and Error.** The three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered.

6. **Juvenile Courts: Appeal and Error.** A proceeding before a juvenile court is a special proceeding for appellate purposes.

7. **Juvenile Courts: Parental Rights: Parent and Child: Final Orders.** Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed.

8. **Constitutional Law: Parental Rights.** Parents have a fundamental liberty interest in directing the education of their children.

9. **Parental Rights: Final Orders: Appeal and Error.** Orders which temporarily suspend a parent's education rights for a brief amount of time do not affect a substantial right and are therefore not appealable.

Appeal from the Separate Juvenile Court of Lancaster County: Linda S. Porter, Judge. Appeal dismissed.

Abby Osborn, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Joe Kelly, Lancaster County Attorney, and Ashley Bohnet for appellee.

Inbody, Chief Judge, and Pirtle and Riedmann, Judges.

Riedmann, Judge.

## INTRODUCTION

Ashley P. appeals the order of the separate juvenile court of Lancaster County suspending her right to make educational decisions for her minor child, Nathaniel P. We conclude that the order appealed from was not a final order because it was temporary in nature and, thus, did not affect a substantial

right of Ashley. Accordingly, we dismiss the appeal for lack of jurisdiction.

## BACKGROUND

Ashley is the mother of Nathaniel, who was born in 2006. Nathaniel was removed from Ashley's care in November 2012 due to reports of abuse and neglect. He was placed in the temporary custody of the Department of Health and Human Services (DHHS) at that time.

In February 2013, Nathaniel was adjudicated as a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). The juvenile court found that Nathaniel lacked proper parental care by reason of the fault or habits of his mother, Ashley, in that she had failed to provide a safe and stable residence for Nathaniel since at least September 2012 and had failed to recognize and address Nathaniel's specialized needs resulting from his developmental delays. It ordered temporary legal and physical custody of Nathaniel to remain with DHHS.

Following a dispositional hearing in March 2013, the juvenile court adopted a case plan and ordered Ashley to participate in various rehabilitative services, including a psychological evaluation, a parenting assessment, one-on-one family support services, and individual and family therapy, as arranged by DHHS. It further ordered that Nathaniel shall remain in the temporary custody of DHHS.

A review hearing was held in the juvenile court on June 17, 2013. DHHS presented evidence regarding Ashley's lack of participation in court-ordered rehabilitative services and ongoing concerns about her ability to make educational decisions in Nathaniel's best interests. A report submitted by Nathaniel's guardian ad litem recommended that Ashley's educational rights be suspended. At the conclusion of the hearing, the juvenile court stated on the record that it would "suspend [Ashley's] educational rights, *at least on a temporary basis at this time*," and authorize DHHS to appoint a surrogate to exercise those rights on her behalf. (Emphasis supplied.)

The court issued a written order the following day. It found that reasonable efforts had been made to return legal custody

of Nathaniel to Ashley, but that doing so would be contrary to Nathaniel's welfare. The court found that no progress had been made by Ashley to alleviate the causes of the adjudication and Nathaniel's out-of-home placement and therefore ordered that Nathaniel remain in the temporary custody of DHHS. Regarding Ashley's educational rights, the order states the following: "[Ashley's] educational rights as they [relate] to Nathaniel . . . are suspended by the Court at this time. [DHHS] may appoint the foster parent or any other individual to act as the surrogate for Nathaniel in exercising educational rights." The permanency planning hearing, which had been scheduled for January 6, 2014, was ordered to be advanced to December 16, 2013, to coincide with the next review hearing.

Ashley timely appeals.

## ASSIGNMENT OF ERROR

Ashley alleges that the juvenile court erred in suspending her right to make educational decisions for Nathaniel.

## STANDARD OF REVIEW

[1,2] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Danaisha W. et al.*, 287 Neb. 27, 840 N.W.2d 533 (2013). A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *Id*.

## ANALYSIS

Ashley appeals from the order entered by the juvenile court on June 18, 2013, which suspended her right to make educational decisions for Nathaniel. The State argues that this order was not a final, appealable order because it did not affect a substantial right of Ashley and that therefore, we lack jurisdiction to hear this appeal.

[3,4] In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Id*. For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by a tribunal from which the appeal is taken. *Id*.

[5,6] The three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered. *In re Interest of Tayla R.*, 17 Neb. App. 595, 767 N.W.2d 127 (2009). A proceeding before a juvenile court is a "special proceeding" for appellate purposes. *Id*. Thus, the pertinent inquiry is whether the June 18, 2013, order suspending Ashley's right to make educational decisions for Nathaniel affected a substantial right of Ashley.

[7,8] Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed. *In re Interest of Danaisha W. et al., supra*. The U.S. Supreme Court has clearly established that parents have a fundamental liberty interest in directing the education of their children. See, *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); *Washington v. Glucksberg*, 521 U.S. 702, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923). Thus, there can be no doubt that the object of the June 18, 2013, order is of sufficient importance to affect a substantial right.

We must now consider the second prong of the substantial right analysis, which considers the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed. The Nebraska Supreme Court has held that "[o]rders which *temporarily* suspend a parent's custody and visitation rights do not affect a substantial right and are therefore not appealable." *In re Interest of Danaisha W. et al.*, 287 Neb. 27, 33, 840 N.W.2d 533, 537 (2013) (emphasis supplied). See, also, *Steven S. v. Mary S.*, 277 Neb. 124, 131, 760 N.W.2d 28, 34 (2009) (holding that order suspending mother's visitation with her children until further order of court did not affect substantial right of mother because it was

not permanent disposition and mother's relationship would be disturbed for only "brief" amount of time).

[9] While the parental rights at issue in this case relate to a parent's right to make educational decisions, rather than custody or visitation rights, we see no reason to apply a different rule. We note we have previously applied the same rule in analyzing whether a prohibition on parents' constitutional right to free speech regarding their child's medical condition was temporary and therefore not a final order. See *In re Interest of T.T.*, 18 Neb. App. 176, 779 N.W.2d 602 (2009). We therefore conclude that orders which temporarily suspend a parent's education rights for a brief amount of time do not affect a substantial right and are therefore not appealable.

The June 18, 2013, order did not permanently revoke Ashley's right to direct Nathaniel's education; rather, it "suspended" her education rights to Nathaniel "at [that] time." Although the order did not specifically state that the suspension was temporary, such finding can be made from the context of the order. See *In re Interest of Danaisha W. et al., supra*. The use of the word "suspend" denotes its temporary nature. The definition of "suspend" in this context is "[t]o *temporarily* keep [one] from performing a function, occupying an office, holding a job, or exercising a right or privilege." Black's Law Dictionary 1584 (9th ed. 2009) (emphasis supplied). The temporary nature of the order is further established by the court's statement on the record that it was suspending Ashley's educational rights "at least on a temporary basis at this time."

We recognize that the next review hearing in this matter was not scheduled to occur until December 16, 2013, almost 6 months later. However, the court ordered DHHS to submit a status report in 90 days and encouraged the parties to request an earlier review if Ashley's progress necessitated a change in the court's order. Specifically, the court stated on the record:

> I note that a permanency hearing is scheduled for January, which is right about six months and a couple of weeks. I think we'll keep that. But I'm going to have [DHHS] submit to the Court and parties a 90-day letter report just advising the Court and parties as to the status

of [Ashley's] compliance with the court orders and the court-ordered services. And any party can always request an early review if [Ashley] has decided to participate in the rehabilitative plan and there needs to be a change in the court order. I'm always willing to consider that. But I think under these circumstances, we'll just leave the permanency hearing out there with the status report by [DHHS] in 90 days.

Thus, Ashley had the power to regain her education rights before the next scheduled review hearing by participating in the rehabilitative services provided by DHHS and showing that it would be in Nathaniel's best interests for her to regain them. See *In re Interest of Clifford M. et al.*, 258 Neb. 800, 606 N.W.2d 743 (2000) (holding that order suspending mother's visitation was not final order because it did not purport to terminate visitation and mother remained free to regain visitation upon showing that visitation was in best interests of her children).

Because the June 18, 2013, order was not a permanent disposition and was expected to disturb Ashley's education rights for a relatively short period of time, we conclude that a substantial right was not affected.

## CONCLUSION

The juvenile court's order temporarily suspending Ashley's educational rights on June 18, 2013, was not a final order affecting a substantial right. Accordingly, we dismiss this appeal for lack of jurisdiction.

APPEAL DISMISSED.