IN RE INTEREST OF SARAH K., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
ROBERT K. AND SANDRA K., APPELLANTS.

601 N.W. 2d 780

Filed October 29, 1999.    No. S-99-181.

Robert K. and Sandra K., pro se.

Linda S. Porter, Deputy Lancaster County Attorney, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
## NATURE OF CASE
Robert K. and Sandra K., respectively the father and mother of Sarah K., a minor, appeal from the December 22, 1998, order entered by the juvenile court of Lancaster County. The December 22 order approved an initial permanency plan which provided for long-term foster care for Sarah, supervised visitation with the parents, and the possibility of reunification with the parents. The December 22 order also found that the filing of a petition to terminate the parental rights of the parents was not in Sarah's best interests. We conclude that the December 22 order is not an appealable order and, therefore, dismiss for lack of jurisdiction.

## STATEMENT OF FACTS
On September 28, 1995, Sarah, born on October 31, 1981, was adjudicated to be a child as described in Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1995). The adjudication was based in part on the faults of the mother due to her inappropriate physical discipline of Sarah and in part not due to the fault of the parents because of Sarah's self-destructive behavior. Since June 1997, Sarah has resided at a foster care facility. The family has been subject to rehabilitation plans since Sarah's adjudication, and no appeals have been taken therefrom.

Operative July 1, 1998, Neb. Rev. Stat. § 43-1312 (Reissue 1993) was amended to require, in pertinent part, that initial and periodic hearings be held to review permanency plans for juveniles who have been in state foster care for 12 months. See § 43-1312(3) (Reissue 1998). Also operative July 1, Neb. Rev. Stat. § 43-292.02 (Reissue 1998) requires that termination of parental rights proceedings be instituted where a juvenile has been in foster care for 15 or more of the most recent 22 months, or that the State establish at an exception hearing that an exception to termination is in the juvenile's best interests under § 43-292.02(3)(b).

Pursuant to §§ 43-1312(3) and 43-292.02, the State filed a motion to hold an initial hearing on a permanency plan for Sarah relative to her foster care. The trial court granted the motion, and the combined permanency and exception hearing was scheduled for October 22, 1998, the same date as the next regularly scheduled case disposition review. In response to the State's motion, the parents, appearing pro se, filed a "demurrer" objecting to the combined dispositional and permanency hearing.

At the October 22, 1998, hearing, the juvenile court approved the case plan submitted by the State. The juvenile court, however, specifically continued the hearing on the permanency plan and exception to November 30. The case plan, supported by a report approved by the juvenile court on October 22, provided, inter alia, for long-term foster care for Sarah, supervised visitation by the parents, and a goal of reunification. No appeal was taken from the October 22 order.

On November 30, 1998, the juvenile court conducted the initial permanency hearing involving Sarah and her parents. This hearing was combined with an exception hearing which, pursuant to § 43-292.02(1)(a), must be held after the juvenile has been in foster care for 15 or more of the most recent 22 months. At the exception hearing, the State shall advise the court of the steps taken to terminate parental rights or document an "exception" to termination by demonstrating a compelling reason not to file for termination. Where the exception is demonstrated by the evidence, the juvenile court shall find an exception to termination if the juvenile court also finds that it is in the best inter-

ests of the juvenile that the parental rights not be terminated. § 43-292.02(3)(b).

The juvenile court heard testimony and received evidence at the November 30, 1998, hearing. The evidence included testimony from Patrick Kreifels, a Child Protective Services worker for the Nebraska Department of Health and Human Services assigned to Sarah's case. Kreifels testified that while Sarah's reunification with her parents remained a possibility, the permanency plan proposed by the State called for Sarah to continue in long-term foster care. Other evidence received by the court included a recommendation by Sarah's therapist, Jody L. Busse, that, in addition to long-term care, Sarah, then 17 years of age, be prepared for the "eventual transition to independent living." The parents offered a competing plan which, inter alia, called for Sarah to immediately return to the family home.

On December 22, 1998, the juvenile court entered a written order overruling the parents' "demurrer." The juvenile court found that the State's permanency plan of long-term foster care transitioning to independent living was in the best interests of Sarah. In addition, the court specifically found that the "parents' parental rights should not be terminated," that the "exception" set forth in § 43-292.02(3)(b) had been established by the evidence, that an exception was in Sarah's best interests, and that as a result, the State was not required to file a motion or petition to terminate parental rights. The parents appeal the December 22 order.

## STANDARDS OF REVIEW

■ Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings; however, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Tabatha R.*, 255 Neb. 818, 587 N.W.2d 109 (1998).

■ When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent from the deci-

sions made by the lower courts. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997).

## ANALYSIS

For their assignments of error, the parents claim that the juvenile court erred in its December 22, 1998, order in nine particulars. The parents' brief on appeal makes clear that they take exception to the content of the December 22 order and not orders previously entered in the case. The State argues that this court lacks appellate jurisdiction because the appeal is taken from a nonappealable order. Because we conclude that the December 22 order is a nonappealable order, we dismiss.

A proceeding before a juvenile court is a special proceeding for appellate purposes. *In re Interest of Tabatha R., supra.* To be appealable, an order in a special proceeding must affect a substantial right. *Id.* A substantial right is an essential legal right, not a mere technical right. *In re Interest of Anthony G.*, 255 Neb. 442, 586 N.W.2d 427 (1998).

This court has previously noted that "a judicial determination made following an adjudication in a special proceeding which affects the substantial rights of parents to raise their children is a final, appealable order." *In re Interest of Tabatha R.*, 255 Neb. at 827, 587 N.W.2d at 116. However, we have also recognized in juvenile cases that where an order from a juvenile court is already in place and a subsequent order merely extends the time for which the previous order is applicable, the subsequent order by itself does not affect a substantial right and does not extend the time in which the original order may be appealed. *In re Interest of Joshua M. et al., supra.* Thus a dispositional order which merely continues a previous determination is not an appealable order. *Id.* To determine appealability in this case, it is necessary for us to consider the nature of the court's December 22, 1998, order and what parental rights, if any, it affected.

The State's motion for permanency hearing sought that a hearing be held pursuant to "Neb. Rev. Stat. § 43-1312(3) and Section 30 of LB 1041." As amended by 1998 Neb. Laws, L.B. 1041, § 43-1312(3) provides:

(3) Each child in foster care under the supervision of the state shall have a permanency hearing by a court, no later

than twelve months after the date the child enters foster care and annually thereafter during the continuation of foster care. The court's order shall include a finding regarding the appropriateness of the permanency plan determined for the child and shall include whether, and if applicable when, the child will be:

(a) Returned to the parent;

(b) Referred to the state for filing of a petition for termination of parental rights;

(c) Placed for adoption;

(d) Referred for guardianship; or

(e) In cases where the state agency has documented to the court a compelling reason for determining that it would not be in the best interests of the child to return home, (i) referred for termination of parental rights, (ii) placed for adoption with a fit and willing relative, or (iii) placed with a guardian.

The permanency hearing of November 30, 1998, was combined with the exception hearing provided for in § 43-292.02(3)(b). Neither the statute nor legislative history contains a definition of "permanency hearing."

According to the introducer's Statement of Intent to L.B. 1041, Health and Human Services Committee, 95th Leg., 2d Sess. (Jan. 22, 1998), the amendments effectuated by L.B. 1041 were necessitated by the terms of the federal Adoption and Safe Families Act of 1997 (ASFA), which mandated certain changes to state juvenile codes as a condition to continued federal funding of certain state programs, including foster care. See 42 U.S.C. § 671 (1994 & Supp. III 1997). The ASFA does not define "permanency hearing."

In the absence of a statutory definition of "permanency" or "permanency hearing," we find the explanations contained in a report entitled "Permanency for Children: Guidelines for State Legislation" (Guidelines) to be helpful. See U.S. Dept. of Justice and U.S. Children's Bureau, Adoption 2002: The President's Initiative on Adoption and Foster Care (Final Draft 1999). The Guidelines were developed to explain the ASFA and to assist state and federal agencies and professionals involved in

juvenile matters in the implementation of the "requisite changes" in state law mandated by ASFA. Guidelines at I-1.

The Guidelines describe "permanency" as "epitomized by a safe, stable and nurturing caregiver" who establishes a positive relationship with the child which allows the basic needs of the child to be met. *Id.* at I-3. We utilize this definition of "permanency" for purposes of defining the nature of a permanency hearing conducted pursuant to § 43-1312(3) as amended.

Under § 43-1312(3), a permanency hearing considers the appropriateness of a plan for a child in foster care with respect to the plan's likelihood of providing, inter alia, a safe, stable, and nurturing environment. A permanency hearing must be conducted no later than 12 months after the child enters foster care. An exception hearing must be conducted after the child has been in foster care for 15 of the most recent 22 months. These hearings are directives to those charged with implementing the juvenile system that the State's objectives for the child in foster care must be presented to the juvenile court and determined after 12 and 15 months, respectively.

The permanency plan proposed by the State and approved by the juvenile court on December 22, 1998, provided that Sarah be placed in long-term foster care with supervised visitation with the parents. The plan provided for the possibility of reunification. The plan further provided that Sarah participate in a program designed to prepare her for independent living. The State proposed, and the juvenile court concluded, that termination proceedings should not be initiated against the parents. The terms of the December 22 order adopting the permanency plan and finding an exception to termination merely repeat the essential terms of the juvenile court's order of October 22. There is nothing inconsistent with the December 22 order compared to the plan approved by the court in its October 22 order, and there is some indication in the record that the October 22 plan continued the terms of prior plans which are not in the record. The parents were not disadvantaged by the juvenile court's order of December 22, nor were their substantial rights changed or affected thereby.

A review of the record shows that the parents have not appealed from any previous orders adopting rehabilitation plans.

In this case, the parents are appealing from the December 22, 1998, juvenile court's order, which merely continued the terms of the plan approved by the juvenile court on October 22. The parents' appeal from the terms of the December 22 order represents a collateral attack on the juvenile court's prior orders establishing the rehabilitation plan. Such attacks are impermissible and do not give rise to appellate jurisdiction. *In re Interest of Zachary L.*, 4 Neb. App. 324, 543 N.W.2d 211 (1996).

The order of December 22, 1998, effects no change in the parents' status or the plan to which the parents and Sarah were previously subject. We conclude on the facts of this case that the court's December 22 order approving the initial permanency plan and finding an exception to termination did not affect a substantial right of the parents, and the December 22 order was, therefore, not an appealable order. See, *In re Interest of Tabatha R.*, 255 Neb. 818, 587 N.W.2d 109 (1998); *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997); *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991), *disapproved on other grounds, O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998); *In re Interest of Andrew H. et al.*, 5 Neb. App. 716, 564 N.W.2d 611 (1997); *In re Interest of Zachary L., supra.* Having concluded that the December 22 order adopting the initial permanency plan and establishing the exception to termination is not an appealable order, we lack jurisdiction to consider the parents' appeal.

## CONCLUSION

The juvenile court order adopting the initial permanency plan and finding an exception to termination did not affect a substantial right of the parents and is, therefore, not an appealable order. The appeal must be dismissed for lack of jurisdiction for the reasons stated above.

APPEAL DISMISSED.